UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| YETI Coolers, LLC, | Case No. 1:20-cv-00086 |
| Plaintiff, | COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR: |
| v. | |
| V-Rose Enterprise, LLC d/b/a Calavera Coolers, | |
| Defendant. | |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**

(1) TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a);
(2) TRADE DRESS DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c);
(3) UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);
(4) TRADE DRESS DILUTION IN VIOLATION OF TEX. BUS. & COM. CODE § 16.103;
(5) COPYRIGHT INFRINGEMENT IN VIOLATION OF 17 U.S.C. § 501;
(6) COMMON LAW TRADE DRESS INFRINGEMENT;
(7) COMMON LAW UNFAIR COMPETITION;
(8) COMMON LAW MISAPPROPRIATION; AND
(9) UNJUST ENRICHMENT.

**Jury Trial Demanded**

## COMPLAINT

In 2006, brothers Roy and Ryan Seiders founded YETI in Austin, Texas. The Driftwood, Texas natives have a passion for the outdoors, which led them to recognize a need for better coolers. YETI developed unique designs for its coolers, including its Roadie® and Tundra® coolers.  YETI grew from there and began selling other distinctive products, including its Rambler® insulated drinkware products. YETI has invested substantial resources in designing, developing, manufacturing, marketing, advertising, and promoting its coolers and drinkware products, and YETI owns rights in its cooler and drinkware products, including in YETI's distinct designs. YETI also owns copyrights in artwork that it uses in connection with its products, including on its website, www.yeti.com.

Given its substantial investments, YETI takes seriously the need to protect its rights, and YETI strives to eliminate the consumer confusion that is likely to occur when others infringe YETI's rights by using YETI's designs (or colorable imitations thereof) and by using YETI's artwork.  That's what this case is about—Calavera is selling cooler and drinkware products that are confusingly similar to YETI's distinctive cooler and drinkware designs, and Calavera is also using YETI's copyrighted artwork to do so.  Calavera's actions are likely to cause confusion among consumers about the affiliation, connection, and association of YETI with Calavera. Calavera's use of YETI's designs is also likely to dilute YETI's famous designs.  YETI and Calavera are not affiliated, YETI does not sponsor or approve Calavera's products, and Calavera must stop selling its infringing products and infringing YETI's copyrights.

YETI tried to resolve this dispute with Calavera before bringing this lawsuit, including sending multiple letters to Calavera.  Calavera did not respond, and YETI therefore had no choice but to file this lawsuit.

Accordingly, Plaintiff, YETI Coolers, LLC ("YETI"), for its complaint against Defendant, V-Rose Enterprise, LLC d/b/a Calavera Coolers ("Calavera"), further alleges as follows:

### The Parties

1.     YETI is a company organized and existing under the laws of the State of Delaware with a principal place of business at 7601 Southwest Parkway, Austin, TX 78735.

2.     On information and belief, V-Rose Enterprise, LLC d/b/a Calavera Coolers is an Arizona company with a principal place of business at 22387 E. Cherrywood Drive Queen Creek, AZ, 85142.

### Jurisdiction and Venue

3.     This is a complaint for damages and injunctive relief based on Calavera's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of coolers and drinkware, and includes multiple grounds for relief including trade dress infringement, trade dress dilution, unfair competition and false designation of origin, copyright infringement, misappropriation, and unjust enrichment.  This complaint arises under the Texas Business & Commerce Code; the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* ("the Lanham Act"); the  Copyright Act, 17 U.S.C. § 101, *et seq.*; federal common law; and state common law, including the law of Texas.

4.     This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

5.     This Court has personal jurisdiction over Calavera because, *inter alia*, Calavera is purposefully and intentionally availing itself of the privileges of doing business in the State of Texas, including in this District.  Among other things, (i) Calavera has advertised, marketed,

promoted, offered for sale, sold, and/or distributed, and, on information and belief, continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import, infringing products to customers and/or potential customers, including in this District, at least through Calavera's principal websites, https://www.calaveracoolers.com/, https://www.facebook.com/CalaveraCoolers/, https://www.instagram.com/calaveracoolers/, https://twitter.com/CoolersCalavera, and https://www.youtube.com/channel/UC3i8U7EVb7NpfgvOuNuxcgA, (ii) Calavera's tortious acts giving rise to this lawsuit and harm to YETI have occurred and are occurring in the State of Texas, including in this District, (iii) on information and belief, Calavera acted with knowledge that its unauthorized use of YETI's rights would cause harm to YETI in the State of Texas, including in this District, and (iv) Calavera's customers and/or potential customers reside in the State of Texas, including in this District.

6.      Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(a)-(d).

**General Allegations – YETI's Intellectual Property**

7.      For years, YETI has continuously engaged in the design, development, manufacture, promotion, and sale of its Roadie® and Tundra® coolers, including, for example, the Roadie® 20 cooler, the Tundra® 45 cooler, and the Tundra® 65 cooler (collectively, "Roadie® and Tundra® Coolers"). YETI created unique, distinctive, and non-functional designs to use with YETI's Roadie® and Tundra® Coolers. YETI has extensively and continuously promoted and used these designs in the United States and Texas. Through that extensive and continuous promotion and use, YETI's designs have become a well-known indicator of the origin and quality of YETI's Roadie® and Tundra® Cooler products. YETI's designs also have acquired substantial secondary meaning in the marketplace and have become famous. As

discussed in more detail below, YETI owns trade dress rights relating to its Roadie® and Tundra® Cooler designs.

8.      YETI has enjoyed significant sales of its Roadie® and Tundra® Coolers throughout the United States, including sales to customers in the State of Texas.  YETI has invested significant resources in the design, development, manufacture, advertising, and marketing of its Roadie® and Tundra® Coolers.  The designs and features of YETI's Roadie® and Tundra® Coolers have received widespread and unsolicited public attention.  For example, the Roadie® and Tundra® Coolers have been featured in numerous newspaper, magazine, and Internet articles.

9.      The designs of the Roadie® and Tundra® Coolers have distinctive and non-functional features that identify to consumers that the origin of the coolers is YETI.  As a result of at least YETI's continuous and exclusive use of the designs of the Roadie® and Tundra® Coolers, YETI's marketing, advertising, and sales of the Roadie® and Tundra® Coolers, and the highly valuable goodwill, substantial secondary meaning, and fame acquired as a result, YETI owns trade dress rights in the designs and appearances of the Roadie® and Tundra® Coolers, which consumers have come to uniquely associate with YETI.

10.      Exemplary images of YETI's Roadie® and Tundra® Coolers are shown below:

**Illustration 1: Exemplary Image of a YETI Roadie® Cooler.**



**Illustration 2: Exemplary Images of YETI Tundra® Coolers.**

**YETI Tundra® 45 Cooler**



**YETI Tundra® 65 Cooler**

11.     YETI has trade dress rights in the overall look, design, and appearance of its Roadie® and Tundra® Coolers, which include the design and appearance of the style line on the front of the coolers; the design and appearance of the style line on the back of the coolers; the design and appearance of the front corners (with indentations) of the coolers; the design and appearance of the style line above the front style line; the design and appearance of the ledge around the perimeter of the cooler bodies; the design and appearance of the style line on each side of the coolers; the color contrast and color combinations of the coolers; and the relationship of these features to each other and to other features.

12.     For years, YETI also has continuously engaged in the design, development, manufacture, promotion, and sale of its insulated drinkware, including its 30 oz. Rambler® Tumbler, 20 oz. Rambler® Tumbler, and Rambler® Colster® Beverage Holder (collectively, "Rambler® Drinkware").  YETI created unique, distinctive, and non-functional designs to use with YETI's Rambler® Drinkware.  YETI has extensively and continuously promoted and used these designs in the United States and in Texas.  Through that extensive and continuous promotion and use, YETI's designs have become well-known indicators of the origin and quality of YETI's Rambler® Drinkware products.  YETI's designs also have acquired substantial

secondary meaning in the marketplace and have become famous.  As discussed in more detail below, YETI owns trade dress rights relating to its Rambler® Drinkware designs.

13.     YETI has enjoyed significant sales of the Rambler® Drinkware throughout the United States, including sales to customers in the State of Texas.  YETI has invested significant resources in the design, development, manufacture, advertising, and marketing of the Rambler® Drinkware.  The designs and features of the Rambler® Drinkware have received widespread and unsolicited public attention.  For example, the Rambler® Drinkware have been featured in numerous newspaper, magazine, and Internet articles.

14.     The designs of the Rambler® Drinkware are distinctive and non-functional and identify to consumers that the origin of the Rambler® Drinkware is YETI.  As a result of at least YETI's continuous and exclusive use of the Rambler® Drinkware, YETI's marketing, advertising, and sales of the Rambler® Drinkware, and the highly valuable goodwill, substantial secondary meaning, and fame acquired as a result, YETI owns trade dress rights in the designs and appearances of the Rambler® Drinkware, which consumers have come to uniquely associate with YETI.

15.     Exemplary images of a YETI 30 oz. Rambler® Tumbler are shown below:

| Illustration 3:  Exemplary Images of a YETI 30 oz. Rambler® Tumbler. |
| --- |



16.    YETI has trade dress rights in the overall look, design, and appearance of the

YETI 30 oz. Rambler® Tumbler, which includes the design and appearance of the curves, tapers,

and lines in the YETI 30 oz. Rambler® Tumbler; the design and appearance of the profile of the

YETI 30 oz. Rambler® Tumbler; the design and appearance of the walls of the YETI 30 oz.

Rambler® Tumbler; the design and appearance of the rim of the YETI 30 oz. Rambler®

Tumbler; the design, appearance, and placement of the taper in the side wall of the YETI 30 oz.

Rambler® Tumbler; the design, appearance, and placement of the upper portion, mid portion, and bottom portion of the side wall of the YETI 30 oz. Rambler® Tumbler; the design, appearance, and placement of the style line around the base of the YETI 30 oz. Rambler® Tumbler; the design, appearance, and placement of the tab on the lid of the YETI 30 oz. Rambler® Tumbler; the design, appearance, and placement of the drinking opening on the lid of the YETI 30 oz. Rambler® Tumbler; the design, appearance, and placement of the top plane of the lid of the YETI 30 oz. Rambler® Tumbler; the design, appearance, and placement of the side walls of the lid of the YETI 30 oz. Rambler® Tumbler; the color contrast and color combinations of the YETI 30 oz. Rambler® Tumbler and the tumbler lid of the YETI 30 oz. Rambler® Tumbler; and the relationship of these features to each other and to other features.

17.    Exemplary images of a YETI 20 oz. Rambler® Tumbler are shown below:

**Illustration 4:  Exemplary Images of YETI 20 oz. Rambler® Tumbler.**



18.    YETI has trade dress rights in the overall look, design, and appearance of the YETI 20 oz. Rambler® Tumbler, which includes the design and appearance of the curves, tapers, and lines in the YETI 20 oz. Rambler® Tumbler; the design and appearance of the profile of the YETI 20 oz. Rambler® Tumbler; the design and appearance of the walls of the YETI 20 oz.

Rambler® Tumbler; the design and appearance of the rim of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the taper in the side wall of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the style line around the base of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the tab on the lid of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the drinking opening on the lid of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the top plane of the lid of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the side walls of the lid of the YETI 20 oz. Rambler® Tumbler; the color contrast and color combinations of the YETI 20 oz. Rambler® Tumbler and the tumbler lid of the YETI 20 oz. Rambler® Tumbler; and the relationship of these features to each other and to other features.

19.     Exemplary images of a YETI Rambler® Colster® Beverage Holder are shown below:

**Illustration 5:  Exemplary Images of a YETI Rambler® Colster® Beverage Holder.**

20.     YETI has trade dress rights in the overall look, design, and appearance of the YETI Rambler® Colster® Beverage Holder, which includes the design and appearance of the curves and lines in the YETI Rambler® Colster® Beverage Holder; the design and appearance of the profile of the YETI Rambler® Colster® Beverage Holder; the design and appearance of the walls of the YETI Rambler® Colster® Beverage Holder; the design and appearance of the rim of the YETI Rambler® Colster® Beverage Holder; the design, appearance, and placement of the top plane of the upper band of the YETI Rambler® Colster® Beverage Holder; the design, appearance, and placement of the side walls of the upper band of the YETI Rambler® Colster® Beverage Holder; the design, appearance, and placement of the style line around the base of the YETI Rambler® Colster® Beverage Holder; the color contrast and color combinations of the YETI Rambler® Colster® Beverage Holder and the upper band of the YETI Rambler® Colster® Beverage Holder; and the relationship of these features to each other and to other features.

21.     As a result of YETI's exclusive, continuous, and substantial use, advertising, and sales of its Roadie® and Tundra® Coolers and Rambler® Drinkware products bearing YETI's trade dress, and the publicity and attention that has been paid to YETI's trade dress, YETI's trade dress has become famous and has acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate YETI's trade dress as a source identifier of YETI.

22.     YETI also owns copyrights related to its products, including its Roadie® and Tundra® Coolers, such as Copyright Registration No. 2-166-938 ("the '938 Registration").  This copyright registration is also referred to as "YETI's Copyright."

23.     The '938 Registration is titled "YETI – Additional Features Artwork."  The '938 Registration certificate was duly and legally issued by the U.S. Copyright Office to YETI on

August 20, 2019.  YETI owns the entire right, title, and interest to the '938 Registration.  A copy of the '938 Registration Certificate is attached as Exhibit 1, and the copyrighted artwork is shown in Illustration 6 below:

| Illustration 6: YETI – Additional Features Artwork for the '938 Registration. |
| :---: |



**ADDITIONAL FEATURES**

**T-REX™ LID LATCHES**
Heavy-duty rubber latches are made with patented technology so you'll never see another busted latch.

**ANCHORPOINT™ TIE-DOWN SLOTS**
Molded tie-down slots for easy mounting to your boat, trailer, or truck bed.

**NEVERFAIL™ HINGE SYSTEM**
Two hinge pins and interlocking design prevent the hinge from ever breaking.

**INTERLOCK™ LID SYSTEM**
Creates a form-fitting barrier against the heat.

**COLDLOCK™ GASKET**
A freezer-quality gasket circles the length of the lid to block out the heat and lock in the cold.

**LIPGRIP™ HANDLES**
Stay out of the way and make carrying your catch seem less of a chore.

**DOUBLEHAUL™ HANDLES**
Military-grade polyester rope for extra durability.

**VORTEX™ DRAIN SYSTEM**
Leakproof, rugged, and designed for quick and easy draining.

**BEARFOOT™ NON-SLIP FEET**
Prevent sliding to keep your YETI in place.

## General Allegations – Calavera's Unlawful Activities

24.     Calavera has purposefully advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported, and continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import, cooler and drinkware products that violate YETI's rights, including the rights protected by YETI's intellectual property.  Calavera's infringing products are confusingly similar imitations of YETI's products.  Calavera's actions have all been without the authorization of YETI.

25.     As discussed in more detail below, Calavera is selling infringing coolers and drinkware and is unlawfully using at least one of YETI's copyrights to do so.  Calavera is trying to confuse consumers into thinking that its coolers and drinkware are associated with, sponsored by, or approved by YETI, when they are not.  Calavera's actions are unlawful, and they must stop.  Calavera must also compensate YETI for Calavera's violations of the law.

26.     Calavera's infringing cooler products include at least its Calavera 22 QT Cooler, Calavera 48 QT Cooler, and Calavera 69 QT Cooler. Exemplary images of Calavera's infringing cooler products are shown below:

| Illustration 7:  Exemplary Images of Calavera's Infringing Cooler Products. |
| --- |



**Calavera 22 QT Cooler**

**Calavera 48 QT Cooler**



**Calavera 69 QT Cooler**

27.    Calavera's infringing drinkware products include at least its Calavera 30 oz. tumblers, Calavera 20 oz. tumblers, and Calavera Can Koozie beverage holders. Exemplary images of Calavera's infringing drinkware products are shown below:

**Illustration 8:  Exemplary Image of Calavera's Infringing 30 oz. Tumbler Products.**



**Illustration 9:  Exemplary Image of Calavera's Infringing 20 oz. Tumbler Products.**



**Illustration 10:  Exemplary Image of Calavera's Infringing Beverage Holder Products.**



28.     As a result of Calavera's activities related to the infringing products, there is a likelihood of confusion between Calavera and its products on the one hand, and YETI and its products on the other hand.

29.     YETI used its trade dress extensively and continuously before Calavera began advertising, promoting, offering to sell, selling, distributing, manufacturing, and/or importing its infringing products.   Moreover, YETI's trade dress became famous and acquired secondary meaning in the United States and in the State of Texas generally and in geographic areas in Texas before Calavera commenced its unlawful use of YETI's trade dress.

30.     Additionally, at least through http://calaveracoolers.com/, Calavera is copying YETI's artwork at least from YETI's website, www.yeti.com, which is protected by YETI's Copyright.  An example of Calavera's unlawful copying is shown below:

| Illustration 11: Image from http://calaveracoolers.com/ |
|---|



31.    As discussed above and as set forth in the counts below, Calavera's actions are unfair and unlawful.

### Count I:
### Trade Dress Infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

32.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 31 as though fully set forth herein.

33.    Calavera's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by infringing YETI's trade dress.  Calavera's use of YETI's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the

affiliation, connection, and/or association of Calavera with YETI and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with YETI.

34.     YETI's trade dress is entitled to protection under the Lanham Act.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its trade dress in the United States.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before Calavera commenced its unlawful use of YETI's trade dress in connection with the infringing products.

35.     Calavera's use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.

36.     On information and belief, Calavera's use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious.  Calavera's bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress and Calavera's continuing disregard for YETI's rights.

37.     YETI is entitled to injunctive relief, and YETI is entitled to recover at least Calavera's profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count II:**
**Trade Dress Dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

38.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 37 as though fully set forth herein.

39.     Based on the activities described above, including, for example, Calavera's advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing the infringing products, Calavera is likely to dilute, has diluted, and continues to dilute YETI's famous trade dress in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Calavera's use of YETI's trade dress and/or colorable imitations thereof is likely to cause, and has caused, dilution of YETI's famous trade dress at least by eroding the public's exclusive identification of YETI's famous trade dress with YETI and YETI's products, by lessening the capacity of YETI's famous trade dress to identify and distinguish YETI's products, by associating YETI's trade dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous trade dress.

40.     YETI's trade dress is famous and is entitled to protection under the Lanham Act. YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI's trade dress has acquired distinctiveness through YETI's extensive and continuous promotion and use of YETI's trade dress in the United States.  Through that extensive and continuous use, YETI's trade dress has become a famous well-known indicator of the origin and quality of YETI's products throughout the United States, and is widely recognized by the general consuming public as a designation of the source of YETI and YETI's products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress became famous and acquired this secondary meaning before Calavera commenced its unlawful use of YETI's trade dress in connection with the infringing products.

41.    Calavera's use of YETI's trade dress and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.

42.    On information and belief, Calavera's use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious.  Calavera's bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress and Calavera's continuing disregard for YETI's rights.

43.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Calavera's profits, YETI's actual damages, enhanced profits and damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

**Count III:**
**Unfair Competition and False Designation of Origin under § 43(a)**
**of the Lanham Act, 15 U.S.C. § 1125(a)**

44.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 43 as though fully set forth herein.

45.    Calavera's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with YETI, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and constitute unfair competition and false designation of origin, at least because Calavera has obtained an unfair advantage as compared to YETI through Calavera's use of YETI's trade dress and because such uses are likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of Calavera's infringing products, at least by creating the false and misleading impression that its infringing

products are manufactured by, authorized by, or otherwise associated with YETI.

46.     YETI's trade dress is entitled to protection under the Lanham Act.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its trade dress in the United States.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before Calavera commenced its unlawful use of YETI's trade dress in connection with the infringing products.

47.     Calavera's use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.

48.     On information and belief, Calavera's use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious.  Calavera's bad faith is evidenced at least by the similarity of its infringing products to YETI's trade dress and Calavera's continuing disregard for YETI's rights.

49.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Calavera's profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

### Count IV
### Trade Dress Dilution Under Tex. Bus. & Com. Code § 16.103

50.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

51.     Based on the activities described above, including, for example, Calavera's advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing the infringing products, Calavera is likely to dilute, has diluted, and continues to dilute YETI's trade dress in violation of § 16.103 of the Texas Business & Commerce Code. Calavera's use of YETI's trade dress and/or colorable imitations thereof is likely to cause, and has caused, dilution of YETI's famous trade dress at least by eroding the public's exclusive identification of YETI's famous trade dress with YETI, by lessening the capacity of YETI's famous trade dress to identify and distinguish YETI's products, by associating YETI's trade dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous trade dress.

52.     YETI's trade dress is famous and is entitled to protection under Texas law. YETI's trade dress includes unique, distinctive, and non-functional designs. YETI has extensively and continuously promoted and used its trade dress in the United States and in the State of Texas. Through that extensive and continuous use, YETI's trade dress has become a famous well-known indicator of the origin and quality of YETI's products in the United States and in the State of Texas generally and in geographic areas in Texas, and YETI's trade dress is widely recognized by the public throughout Texas and in geographic areas in Texas as a designation of the source of YETI and YETI's products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace, including in the State of Texas and in geographic areas in Texas. Moreover, YETI's trade dress became famous and acquired this secondary meaning before Calavera commenced its unlawful use of YETI's trade dress in connection with the infringing products.

53.     Calavera's use of YETI's trade dress and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.

54.     On information and belief, Calavera's use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Calavera's bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress and by Calavera's continuing disregard for YETI's rights.

55.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Calavera's profits, YETI's actual damages, enhanced profits and damages, and reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104.

**Count V:**
**Copyright Infringement under 17 U.S.C. § 501**

56.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 55 as though fully set forth herein.

57.     Based on the activities described above, including, for example, copying, reproducing, making, displaying, distributing, using, and/or preparing derivative works of YETI's Copyright—and doing so to help advertise, promote, offer for sale, sell, distribute, manufacture, and/or import its infringing products—Calavera has infringed YETI's Copyright in violation of at least 17 U.S.C. § 501.

58.     On information and belief, Calavera's acts of infringement have been intentional, willful, and malicious.  Calavera's bad faith is evidenced at least by Calavera's direct copying of YETI's Copyright, and Calavera then using this copy to, *inter alia*, advertise, promote, offer for

sale, sell, distribute, manufacture, and/or import Calavera's infringing products.  Calavera's bad faith is further evidenced by Calavera's infringement of YETI's other rights, Calavera's knowledge of YETI's rights, and Calavera's continuing disregard for YETI's rights.

59.   Each infringement by Calavera of YETI's Copyright constitutes a separate and distinct act of infringement.

60.   Calavera's infringement of YETI's Copyright has caused irreparable injury to YETI.

61.   YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's actual damages and/or Calavera's profits under 17 U.S.C. § 504(b), or in the alternative statutory damages under 17 U.S.C. § 504(c), and costs at least under 17 U.S.C. § 505.

**Count VI:**
**Common Law Trade Dress Infringement**

62.   YETI realleges and incorporates the allegations set forth in paragraphs 1 through 61 as though fully set forth herein.

63.   Calavera's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with YETI, constitute common law trade dress infringement, at least because Calavera's use of YETI's trade dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of its infringing products, at least by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with YETI.

64.   YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its trade dress in the United States and the State of Texas.

Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before Calavera commenced its unlawful use of YETI's trade dress in connection with its infringing products.

65.     Calavera's use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.

66.     On information and belief, Calavera's use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious.  Calavera's bad faith is evidenced at least by the similarity of its infringing products to YETI's trade dress and Calavera's continuing disregard for YETI's rights.

67.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Calavera's profits, punitive damages, costs, and reasonable attorney fees.

**Count VII:**
**Common Law Unfair Competition**

68.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 67 as though fully set forth herein.

69.     Calavera's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with YETI, constitute common law unfair competition, at least by palming off/passing off of Calavera's goods, by simulating YETI's trade dress in an intentional and calculated manner that

is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of Calavera's infringing products, at least by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with YETI. Calavera has also interfered with YETI's business.

70.     YETI's trade dress is entitled to protection under the common law. YETI's trade dress includes unique, distinctive, and non-functional designs. YETI has extensively and continuously promoted and used YETI's trade dress for years in the United States and the State of Texas. Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress acquired this secondary meaning before Calavera commenced its unlawful use of YETI's trade dress in connection with its infringing products.

71.     Calavera's use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.

72.     On information and belief, Calavera's use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Calavera's bad faith is evidenced at least by the similarity of its infringing products to YETI's trade dress and Calavera's continuing disregard for YETI's rights.

73.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Calavera's profits, punitive damages, costs, and reasonable attorney fees.

**Count VIII:**
**Common Law Misappropriation**

74.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 73 as though fully set forth herein.

75.     Calavera's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with YETI, constitute common law misappropriation.

76.     YETI created the products covered by YETI's trade dress through extensive time, labor, effort, skill, and money.  Calavera has wrongfully used YETI's trade dress and/or colorable imitations thereof in competition with YETI and gained a special advantage because Calavera was not burdened with the expenses incurred by YETI.  Calavera has commercially damaged YETI, at least by causing consumer confusion as to origin and/or sponsorship/affiliation of Calavera's infringing products, by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with YETI, and by taking away sales that YETI would have made.

77.     YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used YETI's trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before Calavera commenced its unlawful use of YETI's trade dress in connection with its infringing products.

78.     Calavera's use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.  Moreover, as a result of its misappropriation, Calavera has profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that YETI invested in establishing the reputation and goodwill associated with YETI's trade dress, YETI's products, and YETI.

79.     On information and belief, Calavera's misappropriation of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious.  Calavera's bad faith is evidenced at least by the similarity of its infringing products to YETI's trade dress and Calavera's continuing disregard for YETI's rights.

80.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Calavera's profits, punitive damages, costs, and reasonable attorney fees.

## Count IX:
## Unjust Enrichment

81.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 80 as though fully set forth herein.

82.     Calavera's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of its infringing products, in direct competition with YETI, constitute unjust enrichment, at least because Calavera has wrongfully obtained benefits at YETI's expense.  Calavera has also, *inter alia*, operated with an undue advantage.

83.     YETI created the products covered by YETI's trade dress through extensive time, labor, effort, skill, and money.  Calavera has wrongfully used and is wrongfully using YETI's

trade dress and/or colorable imitations thereof in competition with YETI, has gained and is gaining a wrongful benefit by undue advantage through such use. Calavera has not been burdened with the expenses incurred by YETI, yet Calavera is obtaining the resulting benefits for its own business and products.

84.     YETI's trade dress is entitled to protection under the common law. YETI's trade dress includes unique, distinctive, and non-functional designs. YETI has extensively and continuously promoted and used YETI's trade dress for years in the United States and the State of Texas. Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress acquired this secondary meaning before Calavera commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with its infringing products.

85.     Calavera's use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI. YETI accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment. Calavera has wrongfully obtained and is wrongfully obtaining a benefit at YETI's expense by taking undue advantage and free-riding on YETI's efforts and investments, and enjoying the benefits of YETI's hard-earned goodwill and reputation.

86.     On information and belief, Calavera's unjust enrichment at YETI's expense has been intentional, willful, and malicious. Calavera's bad faith is evidenced at least by the

similarity of its infringing products to YETI's trade dress and Calavera's continuing disregard for YETI's rights.

87.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Calavera's profits.

## Demand for Jury Trial

YETI hereby demands a jury trial on all issues so triable.

## Relief Sought

WHEREFORE, Plaintiff respectfully prays for:

1.     Judgment that Calavera has (i) infringed YETI's trade dress in violation of § 1125(a) of Title 15 in the United States Code; (ii) diluted YETI's trade dress in violation of § 1125(c) of Title 15 in the United States Code; (iii) engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (iv) diluted YETI's trade dress in violation of Tex. Bus. & Com. Code § 16.103; (v) infringed YETI's Copyright in violation of § 501 of Title 17 in the United States Code; (vi) violated YETI's common law rights in YETI's trade dress; (vii) engaged in common law unfair competition; (viii) engaged in common law misappropriation; and (ix) been unjustly enriched at YETI's expense; and that all of these wrongful activities by Calavera were willful;

2.     An injunction against further infringement and dilution of YETI's trade dress, further infringement of YETI's copyrights, further acts of unfair competition, misappropriation, and unjust enrichment by Calavera, and each of its agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, manufacturing, importing, or advertising the infringing products, or any other products that use a copy, reproduction, or colorable imitation of

YETI's trade dress and/or copyrights pursuant to at least 15 U.S.C. § 1116 and Tex. Bus. & Com. Code § 16.104;

3.      An Order directing Calavera to recall all infringing products sold and/or distributed and provide a full refund for all recalled infringing products;

4.      An Order directing the destruction of (i) all infringing products, including all recalled infringing products, (ii) any other products that use a copy, reproduction, or colorable imitation of YETI's trade dress and/or copyrights in Calavera's possession or control, (iii) all plates, molds, and other means of making the infringing products in Calavera's possession, custody, or control, and (iv) all advertising materials related to the infringing products in Calavera's possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

5.      An Order directing Calavera to publish a public notice providing proper attribution of YETI's trade dress to YETI, and to provide a copy of this notice to all customers, distributors, and/or others from whom the infringing products are recalled;

6.      An Order barring importation of the infringing products and/or colorable imitations thereof into the United States, and barring entry of the infringing products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

7.      An award of Calavera's profits, YETI's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1125(a), 1125(c), 1116, and 1117 and Tex. Bus. & Com. Code § 16.104;

8.     An award of YETI's actual damages and/or Calavera's profits, or in the alternative statutory damages under, and costs pursuant to 17 U.S.C. § 504(b, c) and § 505; and

9.     Such other and further relief as this Court deems just and proper.


Dated:  January 23, 2020                    Respectfully submitted,


By: /s/ Joseph J. Berghammer
Joseph J. Berghammer (admitted in the Western District of Texas)
Illinois Bar No. 6273690
jberghammer@bannerwitcoff.com
Michael L. Krashin (admitted in the Western District of Texas)
Illinois Bar No. 6286637
mkrashin@bannerwitcoff.com
John A. Webb, Jr. (admitted in the Western District of Texas)
Illinois Bar No. 6321695
jwebb@bannerwitcoff.com
Banner & Witcoff, Ltd.
71 South Wacker Drive
Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

**ATTORNEYS FOR YETI COOLERS, LLC**